Good morning, Your Honors. May it please the Court, my name is Justin Herring and I represent the petitioner, Mr. Pavel Vizcaino Cardona. I would like to reserve three minutes of my time for rebuttal. Mr. Vizcaino was denied the full and fair hearing required by due process. As this Court has stated, an immigration judge has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. The immigration judge made at least three due process errors. First, instead of explaining to Mr. Vizcaino how he could establish his eligibility for asylum and striving to elicit all relevant facts from him, the judge discouraged my client by repeatedly telling him that his application was pointless. Before we get to what the I.J. did, I had trouble figuring out that your client had a brief description of what that case held, but I didn't see any due process claim before the BIA. Well, Your Honor, I think that on the, in his notice of appeal, my client said at least twice referenced his due process claim before this Court. First, he did mention, he did cite to Adjaman, and I think in fairness, Your Honor, particularly in light of the fact that a pro se petitioner's notice of appeal is to be liberally construed for exhaustion purposes. His citation to Adjaman for the principle that there was prejudice, where the I.J. failed to adequately explain the procedures and develop the record, is a reference to his due process claim that we brought before this Court now. And secondly, Your Honor, he did assert that the immigration judge on the previous page of his application, that the immigration judge did not have an adequate factual basis and therefore erred in denying relief, which is very similar to the due process claim as we have formulated, but now before this Court, the immigration judge failed to develop the record by eliciting all the relevant testimony. He seems to be citing Adjaman for his argument about not deciding it in a streamlined basis and not raising it as a due process claim. Well, Your Honor, I think that the organization and structure of the notice of appeal is a little bit unartful, but I think nonetheless, Your Honor, that construed liberally and looked at in the context of his assertion that the I.J. did not develop, adequately develop the record, he is claiming there that he was prejudiced because the I.J. failed to explain to him how he might develop the record. He says, are you referring to where he says that the I.J. didn't have an adequate factual basis? Yes, Your Honor. Okay. I am on the previous page of the record, I believe that's page 35. With respect to the second due process error made by the judge, Your Honor, instead of scrupulously developing the relevant facts, the immigration judge failed to inquire about highly probative facts stated in Mr. Vizcayano's application for asylum. And finally, third, the immigration judge also failed to consider the relevant facts that were on the record. With respect to the fact that the immigration judge discouraged my client, Your Honor, Mr. Vizcayano's attempts to get asylum would be fruitless, and he repeatedly said to my client that although you can apply for asylum, it doesn't look like you're going to be eligible. And in several cases he just said flat out, you're not eligible for asylum. Now, the government contends that these statements should be disregarded because the judge made them under the belief that my client had committed an aggravated felony, and the BIA reversed that determination. But the second time my client appeared before the immigration judge, instead of that he was not eligible for asylum, he actually went ahead and reiterated that point. He said to my client, I believe this is on page 72 of the record, it doesn't look like the remand is going to matter to a large degree, and that you can put forth any reason you want to apply for asylum, but it does not appear that it is going to materially alter the outcome of your case. You know, assuming for the moment that the due process claim is properly in front of I almost read the IJ's statements as trying to be helpful, but as warning him, listen, go ahead and do it, but I have to warn you, I don't think there's going to be much chance of success. And obviously, if the judge had been trying to discourage him from filing at all, the judge failed in that attempt. Well, Your Honor, I think that we have to look at this in the context of it would have been appeared to my client. I mean, he was appearing before an immigration judge that was, in effect, both the judge and the jury, both the judge and the fact finder who was telling him that I think your application is not going to succeed, I think that your application does not have merit. And from the perspective of someone like my client, who is a young man with only a high school education, not a sophisticated actor at all, and appearing pro se, that's going to be highly, highly discouraging. And Your Honor, I did not read the record the same way, but even if we assume that the that he discouraged my client from vigorously pursuing his claims. And I think, you know, you Let me ask you that, discouraged your client from vigorously pursuing, what was the adverse consequence to your client? What didn't he do because of this discouragement? I guess assuming, then, lack of due process, which I'm not sure I'm willing to hold, but assuming that, what's the harm? Well, the harm, Your Honor, is that my client was prevented from putting on facts that might possibly have affected the outcome. And that might possibly have affected the outcome is the standard for prejudice. And what are those facts? The facts are, Your Honor, well, first of all, as he stated in his application for asylum, that individuals close to him had been tortured and physically assaulted, and that was the basis of his fear of persecution. And as we also know from the record, Your Honor, he fears persecution because he is homosexual. And that is a recognized basis in this court for asylum. I mean, the court has at least two occasions said that gay men in Mexico are a social group who are persecuted on that basis, and reversed an IJ's denial of asylum on that basis, Your Honor. And that, I think, goes directly to the prejudice my client suffered as a result of these due process violations. And again, Your Honor, it's not necessary for my client, under the law of the circuit, to show exactly what he would have said or exactly what he would have established, exactly what he would have put forth to show his eligibility, but only that... But I don't see the connection between what the IJ said and the failure of your client to put on evidence of homosexuality. That is to say, he made his asylum claim. And the district judge and the IJ then didn't say, but there are certain things you better not say as part of your asylum claim. Which I think that the judge here, as this Court has said, he has a special duty that goes beyond, for instance, what a district court judge, the duty the district court judge has. An integration judge has a special responsibility to develop the record and make sure that all relevant facts are put forward when the petitioner appears pro se. And this Court said that in Hakinto, citing Judge Noonan's opinion in Fisher. And I think that in context of that special duty, there is an obligation to go beyond simply asking the petitioner, what else do you have to tell me? What else would you like to say about your application for asylum? Particularly where as here... And he should have said, are you gay? It's not necessarily the case, Your Honor, that he should have said that. But what he should have done, at a minimum, Your Honor, is ask about, for instance, the incidents described in my client's application for asylum, when he stated that people close to him had been tortured and physically assaulted in Mexico, and that was the basis or part of the basis for his fear of persecution. That was right there in the record. And I think if the immigration judge's duty to develop the record means anything, surely it means a duty to at least inquire about a statement like that on the application for asylum. It's clearly probative. I mean, that kind of – those kinds of facts are clearly probative of an application for asylum. With that, Your Honor, I would like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Kose Igamori and I represent the United States Attorney General in this case. At the outset, the government does note that it recognizes this Court's decision in Antioga v. McKaysey, the side of December 27th of 2007, which stated that the jurisdiction stripping provisions of Section 1252A2C only apply to orders of removal and not to applications for asylum, withholding, and CAT. However, the government continues to maintain and preserve its argument that Section 1252 applies to all issues arising from removal orders where the removal order is based on a criminal conviction. That being said, on alternative grounds, this Court should dismiss in part and deny in part the instant petition for the following two reasons. First, Petitioner – this Court lacks jurisdiction because Petitioner failed to exhaust his due process claims. And second, the record does not compel, contrary to conclusion to the immigration judge's decision, that Petitioner is ineligible for asylum, withholding, and CAT. This Court has held that it lacks jurisdiction over all issues that have not been raised in previous – in proceedings below. This Court has stated that the – to – in order to satisfy the exhaustion requirement, it must give adequate notice to the Board of the relevant issues. And if there is not that notice, then the Board is not given an adequate opportunity to address the relevant issues. And here, Petitioner – his argument to the Board essentially was that he was a homosexual and that the immigration judge erred in not recognizing or not granting him relief based on that claim. And nowhere does he state that the immigration judge misinformed him or that the immigration judge was biased or hostile or that the immigration judge failed to adequately develop the record, as Your Honor has noted. And thus, this Court would lack jurisdiction over Petitioner's due process claims, but more so because even if the Board – even if the pleadings were insufficient and the pro se status of the alien should be considered, the record does not support Petitioner's allegations that he was misinformed or that he was biased and hostile. As Your Honors have noted, the immigration judge was helpful in this case. He inquired with DHS whether there were other statuses, temporary status perhaps, or other relief, cancellation of removal. He asked throughout the proceedings, Your Honor, in the beginning and towards the end. And the immigration judge was not notified, at least to the – in the asylum application, contrary to what Petitioner asserts in his brief, that his walking and talking differently was because of his sexual preference. In fact, he explained in his asylum application that he walked and talked differently because he grew up in a black community. He stated that he was part of a gang, Neighborhood 40, and that is why he walks and talks differently. He states in his asylum application that he talks like he's black and he talks like – and he walks like he's black and that he carries himself differently. And certainly that is – that his affirmative explanation would be reasonable for the immigration judge to accept what he said was true and, in fact, was given the benefit of the doubt. And the immigration judge noted in his decision that he walked and talked differently because of his race. And Petitioner also argued that the Mexican police were racist. He based his whole argument based on his assertion that the persons of darker skin, persons who do not look Mexican, are persecuted. The record also does not compel the contrary conclusion that he is eligible for asylum because he does not assert any past persecution. He's not been in Mexico since 1988. And he's conceded that he hasn't been in Mexico since 1988. The only information he has is from his brother who was, quote, unquote, messed with in Mexico. He stated that he was detained but released. He didn't testify to any injuries as well, Your Honors. And thus, this Court should, in this instance, Your Honor, on the basis of these facts, dismiss the case in part and deny in part. If there are no further questions, the government will address them as briefs, Your Honor. Okay, thank you. Thank you, Your Honor. With respect to the jurisdictional argument that the government made reference to, I think the government concedes and agrees with my client that 1252A2D carves out and preserves this Court's jurisdiction over constitutional claims, questions of law, and mixed questions of law and fact. And that is quite clearly what my client's due process claim is. And therefore, this Court's jurisdiction over that is preserved. Again, Your Honor, with respect to the exhaustion point, I would say that I think that where my client stated that he believed that the Ninth Circuit had discussed prejudice, where the IJA had failed to adequately explain procedures and develop the records, that admits of an argument that he was trying to inform the BIA that he believed he had been prejudiced by such an inadequate development of the record and by the information that the IJA gave him. And I think that liberally construed, I ask this Court to find that that exhausted his due process claim. Finally, Your Honor, with respect to my client's claim that his due process rights were violated, I think it's important to note here that the IJA didn't just failed not just to seek to elicit relevant testimony, but actively discouraged my client and, in fact, disregarded information on the application for asylum that my client feared persecution because of torture and physical assault. If there are no further questions. Mr. Herring, is this part of the Circuit's pro bono program? I mean, how did you get the case? Well, Your Honor, I believe that the we were asked to take this, my firm was asked to take this case on a pro bono basis to raise this to assure you. And, of course, it's very desirable that the firms take on this work. A lot of the petitioners don't get very good counsel, and you've done the best you could. But it's certainly a rather weak case to give you. You've done heroically with it, but that's about it. Thank you, Your Honor. I second, and I suspect Judge Ikuto will third our thanks for taking this case. We appreciate it. Thank you, Your Honor. I respectfully request that this court remand this case for further proceedings. Thank you very much. The case of Eskaina Cardona v. Mukasey is now submitted for decision. The case of Galloway v. Alameda has been submitted on the briefs. The next case for argument this morning, Nationwide Transport Finance v. Kass Information Systems.
judges: Noonan, Fletcher, Ikuta